United States District Court
for the
Southern District of Florida

| Goran Rajsic, Appellant, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Bankruptcy Appeal |
| | ) | Case No. 16-61937-Civ-Scola |
| Valley Forge Insurance Co., | ) | |
| Appellee. | ) | |

### Order on appeal

This matter is before the Court on the Appellant Goran Rajsic's appeal of the bankruptcy court's order granting the Appellee Valley Forge Insurance Company's motion for summary judgment, as well as the bankruptcy court's entry of final judgment against Rajsic. (Notice of Appeal, ECF No. 1). After reviewing the parties' briefs, the record on appeal, the relevant legal authorities, and for the reasons explained below, the Court **affirms** the bankruptcy court's entry of summary judgment in favor of Valley Forge.

## 1. Procedural Background

Rajsic filed for Chapter 7 bankruptcy on August 19, 2014. (IB at 6, ECF No. 16.) Valley Forge filed an adversary complaint against Rajsic, in which Valley Forge objected to the dischargeability, pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6), of a debt Rajsic owed to Valley Forge. (R. 7-10 at 27.) After Rajsic received his general discharge on October 27, 2015, Valley Forge moved for summary judgment on its claim of nondischargeability. (IB. at 7.) The bankruptcy court heard argument on May 11, 2016, granted summary judgment on July 15, 2016, and entered judgment on July 28, 2016. (*Id.*; (Order Granting Mot. Summ. J., DE 117, ECF No. 7-10 at 119–127; J., DE 126, ECF No. 7-10 at 128–131.) This appeal followed.

## 2. Factual Background

Rajsic, the principal of REC Entertainment, Inc. ("REC"), owned real property located at 4244 West Diversey Avenue, Chicago, Illinois. (AB at 11; R. 7-2 at 15–16; R. 7-4 at 4.)[1] On May 26, 2009, the property sustained severe water damage ("the incident"), for which Rajsic initiated an insurance claim with Valley Forge. (AB at 11.) Rajsic contended that the roof had been damaged by a faulty utility pole alongside the building. (AB at 13; R. 7-4 at 11–12.) PuroClean, a disaster recovery company, was hired to clean up and mitigate the property damage, for which PuroClean submitted an invoice of $19,823.45. (AB at 12;

---
[1] Citations to "R." will refer to the Record on Appeal, which appears on this docket as ECF Number 7. Parallel citations to the bankruptcy-court docket entry will appear as "DE".

Valley Forge's State-Court Mot. Summ. J. Ex. 2, Aff. of Peter Quinn ¶ 4, DE 103, R. 7-11 at 43, 52.) During the claim process, Rajsic submitted a letter to Valley Forge noting that PuroClean had completed work on the property and that REC was renting temporary studios. (R. 7-3 at 8.) Rajsic stated in the letter that he had "already paid" the invoices for rental of the temporary studios and requested reimbursement of $136,324.85. (*Id.*) Rajsic further requested that Valley Forge issue payment of the PuroClean invoice. (*Id.*)

Meanwhile, Valley Forge investigated the claim. (AB at 12–14.) Valley Forge's investigation involved retaining several independent contractors, including a private investigator, a forensic accounting firm, a damage assessment firm, a construction consultant, and a forensic engineering firm. (Am. Compl. Ex. 3, Aff. of Tognarelli ¶ 27, DE 48, R. 7-2 at 27.) The cost of hiring these independent contractors totaled $33,269.94. (*Id.*; R. 7-9 at 14.) Based on information obtained during the investigation, Valley Forge determined that Rajsic's claim had a total value of $1,469,387.80.[2] (Am. Compl. Ex. 3, Aff. of Tognarelli ¶ 26, DE 48, R. 7-2 at 27.) The total value of the claim included costs for repairing the portions of the property affected by the water intrusion, which in turn included the PuroClean invoice. (*Id.* ¶¶ 6, 23, 26, R. 7-2 at 23, 26-27.)

Rajsic provided little to no cooperation with the investigation, failing to submit requested documents and repeatedly failing to appear for an examination under oath. (Valley Forge's State-Court Mot. Summ. J. at 8–11, DE 103 Ex. 5, R. 7-11 at 75–78.) In fact, on April 10, 2010, Rajsic withdrew his insurance claim. (*Id.* at R. 7-11 at 78; IB at 8.)

Valley Forge concluded that Rajsic had staged the incident and had submitted forged invoices for the temporary rental studios. (AB at 14.) Thus, Valley Forge denied the claim on June 7, 2010. (IB at 8.) Nonetheless, although the record is unclear as to the underlying facts, Valley Forge submitted partial payment to PuroClean in the amount of $10,000.00 as a full and final settlement of PuroClean's invoice for $19,823.45. (Valley Forge's State-Court Mot. Summ. J. Ex. 2, Aff. of Peter Quinn ¶ 7, DE 103, R. 7-11 at 43, 61.)

These events led to both criminal and civil proceedings in Illinois state court. Rajsic was indicted for crimes involving schemes to defraud Valley Forge and two other insurance companies. (Am. Compl. Ex. 4, Plea Agreement, DE 48, R. 7-10 at 2.) On January 18, 2012, Rajsic pleaded guilty to forgery by delivery, one of four felony counts in the indictment. (*Id.* at 3.) As part of his plea, Rajsic

---

[2] The record at times includes a total valuation of the claim at $1,717,700.00. (Am. Compl. Ex. 3, Aff. of Tognarelli ¶ 18, DE 48, R. 7-2 at 25; Valley Forge's State-Court Mot. Summ. J. at 18, DE 103 Ex. 5, R. 7-11 at 85.) Valley Forge provided no explanation for this difference. However, the state-court final judgment and the bankruptcy proceedings use the total value of $1,469,387.80. (Final Summ. J., R. 7-10 at 16; Mot. Summ. J. ¶ 11, DE 82, R. 7-10 at 31.)

"admit[ted] that he knowingly executed a scheme to defraud [Valley Forge] . . . and in furtherance of the scheme [he], with the intent to defraud, knowingly delivered a document apparently capable of defrauding another . . . ." (*Id.* at 5.) Rajsic further admitted that the invoices for rental of the temporary studios that Rajsic submitted to Valley Forge on June 11, 2009, "were capable of defrauding [Valley Forge] because . . . [Valley Forge] uses such a document to determine whether to pay a claim for loss and how much to pay on such a claim . . . ." (*Id.*)

Valley Forge brought civil suit against Rajsic in Illinois state court. (AB at 14.) Valley Forge sought, in part, civil damages for insurance fraud in violation of Section 46-5 of the Illinois Criminal Code (720 ILCS 5/46-5, now 720 ILCS 5/17-10.5). (Valley Forge's State-Court Mot. Summ. J., DE 103, R. 7-11 at 80–81.) Those proceedings culminated in the Illinois state court granting partial summary judgment in favor of Valley Forge on May 24, 2012. (Partial Summ. J., R. 7-10 at 13–15.) The Illinois state court specifically found that no issue of fact existed and that REC and Rajsic had "attempted to obtain, by deception, control over Valley Forge's property by making, or causing to be made, a false and fraudulent claim . . . ." (*Id.* ¶ 3.) The Illinois state court further found that REC had violated the terms of the insurance policy "by intentionally concealing and misrepresenting material facts concerning a claim under the Policy . . . ." (*Id.* ¶ 2.)

Thereafter, the Illinois state court entered final summary judgment in favor of Valley Forge. (Final Summ. J., R. 7-10 at 16–17.) The court found damages in the following amounts: (1) $2,938,775.60 for two times the value of the property that Rajsic had attempted to obtain from Valley Forge ($1,469,387.80); (2) $99,809.82 for three times the amount that Rajsic had in fact wrongfully obtained ($33,269.94); plus (3) attorney's fees and costs of $212,746.40. (*Id.*) Thus, Valley Forge was entitled to a total judgment amount of $3,251,331.82. (*Id.*) This judgment was part of the debt Rajsic sought to discharge in his bankruptcy proceedings.

### 3. Legal Standard

This Court has jurisdiction over appeals of a final judgment in a bankruptcy adversary proceeding. 28 U.S.C. § 158(a)(1); *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008). A district court reviews a bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assocs.*, 951 F.2d 1223, 1228–29 (11th Cir. 1992).

### 4. Legal Analysis

Rajsic raises four errors with the Bankruptcy Court's order and judgment: (1) collateral estoppel did not apply to the state-court judgments because the

issues in state court were not identical to the issues raised in bankruptcy court; (2) an issue of material fact existed—namely, whether Rajsic received a benefit from Valley Forge—which precluded entry of summary judgment; (3) Valley Forge did not properly plead the elements of a § 523(a)(2)(A) or (a)(6) claim; (4) and the Bankruptcy Court erroneously relied on affidavits attached to Valley Forge's reply. (IB at 5–6.)

Valley Forge argues that the Supreme Court abolished the "receipt of benefits" requirement for nondischargeability under § 523(a)(2)(A), but even if this were not so, Rajsic did in fact receive a benefit. (AB at 23.) Valley Forge contends that Rajsic waived any argument regarding collateral estoppel by raising it for the first time on appeal. Further, Valley Forge denies any pleading or procedural errors.

### A. The doctrine of collateral estoppel precludes Rajsic from relitigating the Illinois state judgments

Collateral estoppel, or issue preclusion, "prevents successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Novak v. State Parkway Condo. Ass'n*, 141 F. Supp. 3d 901, 906 (N.D. Ill. 2015) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)) (internal quotations omitted). "It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court." *In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996) (citing *Grogan v. Garner,* 498 U.S. 279, 284 n.11 (1991)) ("*Bilzerian 1*"). The Court must consider Illinois law with respect to collateral estoppel because the judgments at issue were rendered by Illinois state courts. *See In re Gonsalves,* 519 B.R. 466, 473–74 (Bankr. D. Md. 2014) ("Determinations regarding the preclusive effect of state court judgments are made using the law of the state in which the judgment was rendered." (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373 (1985))).

In these bankruptcy adversary proceedings, Valley Forge had the burden to show: (1) the parties litigated the issue in a previous proceeding, and the court rendered a final adjudication on the merits of that issue; (2) the issue formed a critical and necessary part of the litigation; (3) the issue in the previous and later trial were identical; and (4) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the prior proceedings. *People v. Daniels*, 718 N.E.2d 149, 161–62 (Ill. 1999); *Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.,* 744 N.E.2d 845, 849 (Ill. 2001). Further, a criminal conviction might serve to estop further litigation of a particular issue in a civil action, due to the higher standard of proof, but not vice versa. *In re Owens*, 532 N.E.2d 248, 252 (Ill. 1988).

### (1) *The parties raised the issue of collateral estoppel*

In its motion for summary judgment before the bankruptcy court, Valley Forge raised the issue, albeit poorly, of collateral estoppel. Valley Forge delineated the facts underlying the criminal and civil judgments against Rajsic and provided the legal basis for applying collateral estoppel to the fraud judgments in the bankruptcy proceedings. (Mot. Summ. J. at 2–3, 5, DE 82, R. 7-10 at 28-29, 31.) Rajsic's single opposition to the application of collateral estoppel in his response concerned Valley Forge's purported failure to prove that Rajsic had obtained a benefit as a result of the fraudulent conduct.[3] (Opp'n to Mot. Summ. J. at 2–5, DE 95, R. 7-10 at 38–41.) However, during the summary-judgment hearing, Rajsic raised several times—in a cursory and conclusory manner—the additional issue of justifiable reliance. (Transcript at 13, 16–17, DE 150, ECF No. 8.) The bankruptcy court then determined that Rajsic was "collaterally estopped from challenging the determination of fraud by the State Court . . . ." (Order Granting Mot. Summ. J. at 7, DE 117, ECF No. 7-10 at 125.)

Rajsic, then, did not raise the issue for the first time on appeal, as Valley Forge alleges. Nor did Rajsic only make passing reference to collateral estoppel in his appellate brief, as he did before the bankruptcy court. Thus, Rajsic has not waived appellate review of the application of collateral estoppel. *Cf. United States v. Hale*, 618 F. App'x 521, 524 (11th Cir. 2015) (declining to resolve an issue not discussed in any meaningful way in the appellate brief); *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (declining to address the merits of a claim not raised in the appellate briefs).

### (2) *The bankruptcy court properly estopped relitigation of the issue of fraud*

The bankruptcy court specifically found that the elements of collateral estoppel existed with respect to a factual finding that Rajsic had committed fraud.[4] (Order Granting Mot. Summ. J. at 7, DE 117, ECF No. 7-10 at 125.) The record supports this finding.

However, whether the "issue" decided in the state adjudications was identical to the "issue" before the bankruptcy court requires clarification. Rajsic insists on appeal that the bankruptcy court erred in applying the doctrine of collateral estoppel because the central issue in the state-court actions was not identical to the issue before the bankruptcy court. (IB at 13.) Rajsic appears to argue—in terms specific to this case—that no exact similitude exists between the

---

[3] As discussed below, whether Rajsic obtained a benefit has absolutely no bearing on the application of collateral estoppel to the issue of fraud.

[4] While the bankruptcy court did not make a specific finding that the parties were the same here as in the state-court proceedings, this element indisputably was met.

elements of fraud in the state actions and the elements required for nondischargeability under §§ 523(a)(2)(A) and (a)(6). And while Rajsic is partly correct in this regard, his argument fails to defeat the application of collateral estoppel.

The bankruptcy court likely contributed to the confusion by stating somewhat imprecisely, "[A]ll the elements of collateral estoppel are present. The elements for finding *nondischargeability* under § 523(a)(2)(A) are identical to those required to impose liability under the Illinois Insurance Fraud Act . . . ." (Order Granting Mot. Summ. J. at 7, CE 117, ECF No. 7-10 at 125) (emphasis added). Rajsic also contributed to the confusion by insisting, in his summary judgment pleadings before the bankruptcy court and in his briefs before this Court, that no identity of the issues existed because the elements of fraud under Illinois law do not require that Rajsic obtain a benefit. (Opp'n to Mot. Summ. J. at 2, DE 95, R. 7-10 at 38; IB at 27.) The "receipt of benefits" approach relates to a determination of nondischargeability pursuant to § 523(a)(2)(A), which the Court will discuss separately, and does not constitute an element of fraud as defined either under Illinois law or under § 523(a)(2)(A). Thus, whether Rajsic received a benefit remains entirely inapposite to the collateral estoppel arguments. *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993), *as corrected on reh'g* (June 22, 1993) ("[C]ollateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability.").

More accurately, in order to determine whether the bankruptcy court properly applied collateral estoppel in this case, the Court must determine whether the elements of fraud in the state-court judgments are identical to the elements of "false pretenses, a false representation, or actual fraud" required under § 523(a)(2)(A). *See, e.g., In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998) ("The question in this case is whether a criminal conviction for securities fraud, combined with a civil disgorgement judgment in favor of the SEC, satisfies the requirements of collateral estoppel for determining 'fraud' under § 523(a)(2)(A).") ("*Bilzerian 2*"); *Kondapalli v. Demasi*, 551 B.R. 653, 658 (M.D. Fla. 2016) ("With respect to the identity of the issues, the Eleventh Circuit has determined that the issue of fraud under § 523(a)(2) is identical to the issue of fraud under Florida law.").

The Supreme Court "has historically construed the terms in § 523(a)(2)(A) to contain the elements that the common law has defined them to include." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) (internal citation and quotations omitted). Under the false-pretenses and false-representation standards, the creditor must prove: "(1) the debtor made a false representation with the purpose and intention of deceiving the creditor; (2) the creditor relied on

the representation; (3) the creditor's reliance was reasonably founded; and (4) the creditor sustained a loss as a result of the representation." *In re Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).

The elements under the actual-fraud standard are less precise. *See Husky*, 136 S. Ct. at 1586; *see also In re Nunnelee*, 560 B.R. 277, 284 (Bankr. N.D. Miss. 2016) ("The precise elements of actual fraud are currently in flux."). As a general guideline, the creditor must prove "fraud that involves moral turpitude or intentional wrong," excluding constructive or implied fraud, where "fraud connotes deception or trickery." *Husky*, 136 S. Ct. at 1586; *see also McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) ("[T]he statute makes clear that actual fraud is broader than misrepresentation [and includes] 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" (quoting 4 *Collier on Bankruptcy* ¶ 523.08[1][e], p. 523-45 (15th ed., Lawrence P. King ed., 2000))).

This Court will not enter into a needless parsing and dissection of the Illinois Criminal Code under which Rajsic was found both criminally and civilly liable. In other words, the Court need not resolve whether the Illinois Criminal Code requires justifiable reliance, the third element of common-law fraud under the false-pretenses and false-representation standards.[5] The record makes patently clear that Rajsic committed actual fraud. Any other finding would lead to absurd results and frustrate the Bankruptcy Code. *See Bilzerian 2*, 153 F.3d at 1282 ("Any other decision would conflict with the general principles behind § 523(a)(2)(A). This court has taken an expansive view of 'debts obtained by fraud' because the malefic debtor may not hoist the Bankruptcy Code as protection from the full consequences of fraudulent conduct.") (internal citation and quotations omitted).

Rajsic admitted to "knowingly execut[ing] a scheme to defraud" Valley Forge. (Plea Agreement at 4, DE 48, R. 7-10 at 5.) In granting Valley Forge's summary judgment, the Illinois state court found that Rajsic staged the incident, falsified documents, and used deception in an attempt to obtain money from Valley Forge on a claim valued at $1.47 million. (Valley Forge's State-Court Mot. Summ. J. at 16, DE 103 Ex. 5, R. 7-11 at 83; Am. Compl. Ex. 3, Aff. of Tognarelli ¶ 26, DE 48, R. 7-2 at 27; Partial Summ. J. at 2, R. 7-10 at 14; Final Summ. J., R. 7-10 at 16.) These actions indicate "fraud that involves moral turpitude or intentional wrong" and include knowing "deceit . . . used to circumvent and cheat

---

[5] The Court notes, however, that Rajsic did concede to the element of justifiable reliance when he admitted in his plea agreement that the false invoices he submitted to Valley Forge were precisely the kind of documents on which Valley Forge relies to make payments on a claim. (Am. Compl. Ex. 4, Plea Agreement, DE 48, R. 7-10 at 5.)

another." *Husky,* 136 S. Ct. at 1586; *McClellan,* 217 F.3d at 893 (internal quotations and citation omitted). Rajsic's conduct as determined in the state-court proceedings satisfies the actual-fraud standard of § 523(a)(2)(A). As a result, the doctrine of collateral estoppel precludes Rajsic from relitigating the Illinois state-court judgments and their factual underpinnings.

### B. Rajsic obtained a benefit, as required for a finding of nondischargeability pursuant to § 523(a)(2)(A)

Rajsic asserts that he did not receive a benefit from any fraudulent conduct, as required by § 523(a)(2)(A). (IB 14, 28–29.) Even while claiming that this fact is "undisputed" (IB at 29), Rajsic claims that whether he received a benefit remains a disputed issue of fact (IB 5, 10, 19–24). Valley Forge first argues that after the Supreme Court's decision in *Cohen v. de la Cruz,* 523 U.S. 213 (1998), circuit courts have rejected the "receipt of benefits" test. (AB 25–27.) Then, Valley Forge contends that even though not required for a finding of nondischargeability, Rajsic did in fact obtain a benefit. (AB 29–31, 35.)

An individual debtor cannot receive a discharge "from any debt . . . for money [or] property . . . to the extent obtained by false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The "obtained by" language has been interpreted by many courts, including the Eleventh Circuit, to mean "that a debtor need not personally obtain the fruits of his fraud." *Kondapalli v. Demasi,* 551 B.R. 653, 660 (M.D. Fla. 2016). Instead, these courts apply the "receipt of benefits" test, "which requires that a debtor merely receive a benefit— direct or indirect—from money, property, services, or credit obtained by fraud." *Id.*; *see also Bilzerian 1,* 100 F.3d at 890 ("The second view . . . is termed the 'receipt of benefits' theory. This theory requires that the debtor gain a *benefit* from the money that was obtained by fraudulent means.").

The facts of this case do not require this Court to decide whether *Cohen* rejected the "receipt of benefits" test because Rajsic did receive a benefit. First and foremost, the state-court expressly found that Rajsic "wrongfully obtained . . . $33,269.94." (Final Summ. J., R. 7-10 at 16.) This Court already determined that Rajsic cannot attack or dispute the state-court judgments in these bankruptcy proceedings.

Next, Rajsic's contention that he did not receive a benefit rests primarily on the unfounded and incorrect assumption that the bankruptcy court based its finding that Rajsic received a benefit on the "disputed" PuroClean payment. (IB 10–12.) The bankruptcy court found, "Rajsic did receive a benefit from his fraud in Valley Forge analyzing, investigating[,] and assisting in the clean-up and remediation of the damage on account of Rajsic's utterly fraudulent claim." (Order Granting Mot. Summ. J. at 7, CE 117, ECF No. 7-10 at 125.) In its findings of

fact, the bankruptcy court expressly noted that the amount "wrongfully obtained" by Rajsic totaled $33,269.94. (*Id.* at 122.) Taking these two findings together, the "benefit" received by Rajsic simply does not include the purportedly disputed $10,000.00 payment to PuroClean. More specifically, the $10,000.00 payment to PuroClean constitutes only a portion of the total $19,823.45 invoice, which the Illinois state court included in the total amount that Rajsic "attempted to obtain," and *not* in the amount Rajsic "wrongfully obtained." (Final Summ. J., R. 7-10 at 16; Am. Compl. Ex. 3, Aff. of Tognarelli ¶ 23, 26, Ex. H, DE 48, R. 7-2 at 26–27; R.7-9 at 14.) Further, Rajsic has never raised a dispute regarding the line-item amounts that comprise the $33,2369.94 total relied upon by the state court in entering final judgment.

     Finally, Rajsic appears to misunderstand the "receipt of benefits" test for which he advocates. As noted above, the debtor need not have received actual money or property for a court to find that the debtor received a "benefit." *Bilzerian 1,* 100 F.3d at 890 n.4 (11th Cir. 1996) ("The better view, however, appears to be that the debtor need not actually procure the money or property for himself. If the debtor benefits *in some way* from the property obtained through his deception, the debt is nondischargeable." (quoting *Matter of Holwerda),* 29 B.R. 486, 489 (Bankr. M.D. Fla. 1983))) (emphasis added).

     Here, Rajsic benefited from Valley Forge's investigation of his fraudulent claim. As Valley Forge notes, it had a legal obligation as an insurer to investigate the claim—an obligation intended to benefit and protect the insured. *Feijoo v. Geico Gen. Ins. Co.,* 137 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015), *aff'd,* No. 15-14947, 2017 WL 429254 (11th Cir. Feb. 1, 2017) (Moore, J.) ("[A]n insurer [has a] duty and right to fully investigate claims."); *Johnson v. Geico Gen. Ins. Co.,* 318 F. App'x 847, 851 (11th Cir. 2009) ("An insurer—acting with diligence and due regard for its insured—is allowed a reasonable time to investigate a claim . . . part of [an insurer's] good faith duty is [the] obligation . . . to investigate the facts."). Had Rajsic's claim been authentic, he would have received the coverage provided by his policy. Valley Forge acted properly under the policy—for Rajsic's benefit—in investigating the claim.

     Thus, the bankruptcy court properly found that Rajsic obtained a benefit as required by § 523(a)(2)(A).[6]

---

[6] The Court also notes that regardless of Rajsic's numerous arguments attacking nondischargeability pursuant to § 523(a)(2)(A), his debt was also nondischargeable pursuant to § 523(a)(6), which *does not require* a debtor to have obtained any benefit from the fraud. *Grogan v. Garner,* 498 U.S. 279, 282 n.2 (1991) ("[F]raud judgments in cases in which the defendant did not obtain money, property, or services from the plaintiffs . . . are more appropriately governed by § 523(a)(6).").

## C. Valley Forge properly pleaded and proved exceptions to discharge pursuant to §§ 523(a)(2)(A) and (6)

Rajsic argues that Valley Forge failed to plead and prove both a § 523(a)(2)(A) claim and a § 523(a)(6) claim. (IB at 31–32.) This Court already disposed of Rajsic's arguments with respect to whether Valley Forge sufficiently pleaded entitlement to a finding of nondischargeability pursuant to § 523(a)(2)(A).

Additionally, § 523(a)(6) excepts from discharge "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." As the bankruptcy court noted, "willful" requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another," and "malicious" means "wrongful and without just cause . . . ." *In re Walker*, 48 F.3d 1161, 1163, 1164 (11th Cir. 1995). "Willful injury" occurs when a debtor "commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* at 1165.

As mentioned previously, Rajsic admitted to "knowingly execut[ing] a scheme to defraud" Valley Forge, "with the intent to defraud . . . ." (Plea Agreement at 4, DE 48, R. 7-10 at 5.) Such an admission fulfills the "willful and malicious" element under § 523(a)(6). Rajsic's assertion that he merely unsuccessfully "attempted" to injure Valley Forge (IB 32) does not relieve him from nondischargeabliliy, because the statutory language focuses on the *purpose* of the debtor's conduct, not on the ultimate result. Rajsic admitted that the purpose of his scheme was to defraud Valley Forge, which is sufficient to except the debt from discharge pursuant to § 523(a)(6).

## D. Entry of summary judgment was not procedurally improper

Rajsic claims that Valley Forge's motion for summary judgment was procedurally improper for two reasons: (1) it did not attach certain documents required by the bankruptcy court's order setting filing and disclosure requirements for pretrial and trial; and (2) Valley Forge attached affidavits to its reply. (IB 33.)

First, Rajsic has failed to include in his designation of items to be included on appeal the relevant bankruptcy-court order. (Appellant's Designation, R. 7-2 at 1–4.) The Court cannot review and ensure compliance with an item not in the record on appeal. *See Selman v. Cobb Cty. Sch. Dist.*, 449 F.3d 1320, 1333 (11th Cir. 2006) ("[T]he burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment."); *see also* Fed. R. Bankr. P. 8009. Regardless, Rajsic appears to assert that Valley Forge improperly relied on exhibits attached to the amended complaint. The Federal Rules of Civil Procedure, however, permit the moving party to support its

factual positions by "citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56; *see also* Fed. R. Bank. P. 7056. Under the facts available here, the Court cannot find error in relying on exhibits attached to the amended complaint to support an argument on summary judgment.

Second, each and every exhibit attached to Valley Forge's reply directly rebutted an argument raised by Rajsic in his response.[7] No rule prohibits a moving party from attaching rebuttal evidence to its reply. S. D. Fla. L.R. 7.1(c) ("All materials in support of any . . . reply, including affidavits and declarations, shall be served with the filing."); *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012), *aff'd,* 523 F. App'x 651 (11th Cir. 2013) (Rosenbaum, J.) ("A significant difference exists, however, between new arguments and evidence, on the one hand, and rebuttal arguments and evidence, on the other."); *Stewart-Patterson v. Celebrity Cruises, Inc.*, No. 12-20902-CIV, 2012 WL 5997057, at *1 (S.D. Fla. Nov. 30, 2012) (Cohn, J.) ("[N]othing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the nonmovant's opposition brief.") (internal citation and quotations omitted).

Rajsic has not identified any procedural defect to undermine the bankruptcy court's granting of summary judgment and entry of final judgment.

### 5. Conclusion

Based on the foregoing reasons, the Court **affirms** the bankruptcy court's order granting Valley Forge's motion for summary judgment, as well as the bankruptcy court's entry of final judgment against Rajsic (DE 117 and DE 126). The Court directs the Clerk to **close** the case.

**Done and ordered** in chambers, at Miami, Florida, on May 15, 2017.

_____
Robert N. Scola, Jr.
United States District Judge

---

[7] The Court recognizes that Valley Forge's reply both replied to Rajsic's response in opposition to the motion for summary judgment and responded to Rajsic's motion to strike.